Good morning. Lori Walsh for Petitioner Jhony Lopez-Garcia. I'd like to reserve three minutes for rebuttal. Petitioner was a member of the MS-13 in El Salvador until, when he was still a minor, he withdrew from the gang. Before fleeing El Salvador, he reported gang-perpetrated crimes to the police. Because he withdrew from the gang, he was assaulted by a gang member who cut Petitioner's face and back with a machete and threatened to kill him. After Petitioner fled, gang members murdered his father and two cousins. One of those murdered cousins had gone with Mr. Lopez-Garcia to the police to report MS-13 crimes. These are consolidated proceedings. The board's 2013 decision denying Petitioner's motion to reopen and the board's 2011 decision denying relief on the merits should be remanded for three primary reasons. I have a question just on what, since you've kind of gone over the Petitioner's MS-13 history, is there any published decision by the BIA that holds that acts committed by a juvenile cannot constitute a serious non-political crime? What's your best authority for that position? Your Honor, Ramirez-Rivero discusses the issue of, affirmed the IJ's decision that the respondent was not subject to the serious non-political crime within an extensive discussion of the Federal Juvenile Delinquency Act. I thought that was the looking at the crimes involving moral turpitude. It does primarily concern crimes involving moral turpitude. There's also a long line of board cases holding that juvenile conduct and dispositions are not crimes under the INA. The government provided a 28-J letter that pointed to some circuit cases saying that they did find that acts of juvenile delinquents were serious non-political crimes with two different circuits. The government's cases, I actually did not receive a 28, I filed a 28-J letter with a board. Maybe it was your 28-J letter. There was a 28-J letter. Okay, the 28-J letter, Your Honor, is a 2000, May 2017, so it was just decided, case that holds that board case that, you know, limits the case to the facts, it's true, but it also states that this wasn't very serious and then cites these other two circuits that came out the other way. Right, I mean, which cases are you speaking of? I guess it was to juvenile acts? Urbina is a Sixth Circuit court, Your Honor, and the petitioner did argue that his status should be a mitigating factor, but the controlling inquiry in that case was a geary-geary weighing of the political nature versus the common law nature of the act. It seems like it's sort of an unsettled issue. I think it is an unsettled issue, Your Honor, and I think the case should be remanded so the agency can make a decision in the first instance whether or not this bar applies. I think the the 2017 BIA case that I filed with my 28-J letter cites a general principle. They say as an initial matter, there's no evidence that the respondent was ever charged with or convicted of a crime. Well, but the thing is, I guess in terms of why would it have to be a hard and fast rule from this standpoint, you could have an MS-13 person that went in at 12 and there was no indication that they had done anything, and then you could have an MS-13 individual that just committed act after act after act and that, you know, murders this, that, and the other. You could have, and why wouldn't that be able to be you know, why can't it be something that a court looks at and decides, well, that really wasn't, even though it's got the MS-13, he did appear to be a gang member, but he really wasn't very active. He really didn't do anything bad as opposed to someone that was a gang member that did a ton of bad things. Why doesn't a court have the authority to look at it and decide how bad is bad? Your Honor, I think political might be discretionary terms, but the board has consistently and repeatedly held that the term crime does not include juvenile dispositions and conduct, and I think that's different. Yeah, and even under the act, even under the FJDA, serious crimes can be crimes, even if they're committed by a juvenile. So like murders and very serious crimes are not treated as juvenile acts at the So even if Ramirez-Rivero's analysis applied in the serious non-political crime, it still isn't an absolute rule. But even under the De La Nuce or the Ramirez-Rivero analysis, one, that analysis was never done by the board, the cases aren't mentioned, and the, the, there are issues in this case with regard to facts underlying the conduct, and also with regard to the age of the issues are dispositive in that, within that analysis, the De La Nuce or the Ramirez-Rivero under the FJDA. In your briefing, though, you raised this only in connection with the ineffective assistance of counsel motion to reopen claim, and so in that context, the BIA just said there wasn't prejudice for, for not arguing withholding or for, that he wasn't entitled to withholding. So it was, still, it was sort of a several steps away from a direct ruling. Isn't that right? You, you were arguing it in the context of ineffective assistance of counsel for the motion to reopen to explain why there was such a long delay in, in, and at the time for a motion to reopen should be told? So the ineffective assistance had to do with the fact that the, the attorney Jacob did not qualify the respondent for voluntary departure, and also that he failed to provide country conditions evidence. So the serious non-political crime issue is on direct appeal from the 2011 board decision. But in your brief, I only saw in the 2011 decision is still before this court on the merits. Did you brief that issue in your, in your brief on appeal? Because I only saw arguments relating to the motion to reopen. Your Honor, motion to reconsider would have been the proper vehicle to ask the board to consider a legal issue, and the, that issue had been raised by attorney Jacob. The court wouldn't be able to, or the legal issue in the 2011 decision in a denial of a motion to reopen, and that's, that's Doussaint v. Mukasey. So the board's 2013, you know, decision wouldn't, wouldn't have been able to cure that legal error. My motion to reopen was about prejudicial and effective assistance, the failure of attorney Jacob to provide country conditions evidence, and the failure of attorney Jacob to qualify. I thought that went to the equitable tolling, so in, or because of the delay in that, otherwise that the motion to reconsider or to reopen was barred by the time and time bar. Right, but those, those, the proceedings were consolidated, right? I filed a motion, or a notice of appearance on the direct appeal of the 2011. And did, do you have a separate brief on that, or just the one brief? There's, there was a, there was a brief. It's consolidated, but the brief only addressed the motion to reopen, reconsider. Right, the, the issue, the issue of the serious non-political crime bar was raised by attorney Jacob, and that's certainly before this court. Assuming that we determined that the acts committed by the petitioner when he was a juvenile did not disqualify him from discretionary relief, doesn't your client still bear the burden of showing a future fear of persecution on account of membership in a cognizable gang? And what's his strongest argument of fear of persecution on account of membership in a cognizable group? Your Honor, both the 2000, both board decisions issued before Enriquez, Rivas, and Pereira-Bach. So we're arguing family, his relationship to his murdered cousins. The expert states, it is my professional opinion that Mr. Lopez Garcia would be at high risk of egregious physical harm and death if returned to El Salvador as a direct result of his familial relationship to his cousins. His strongest argument, I think, is, is that he belongs to a, a group that's clearly cognizable under Enriquez, Rivas, and also Pereira-Bach. That's supported by the expert. He states, actions such as reporting gang crime to the police and participating in investigations result in predictable and brutal reprisals. And that, and the extensive country conditions evidence that we filed also supports his fear. I think what, what's very important is that this court cannot affirm the board on a, on a point that was not analyzed. That his, the conduct that the particularly serious crime bar would be based on is unclear in the record. The IJ states that the bar applied because of street fights, and that's at the record at 494. He, he held that the petitioner's testimony was credible, that he was not actively an active participant in the murder of the farm worker or the rape of a girl. That's at 493. But the board, the 2011 board, made a leap finding that the bar should apply because Mr. Lopez Garcia was an accomplice to murder and rape. So that, the, what, we don't even know what the we don't know what the conduct was that this bar, you know, applies to according to the agency. And we don't know what age he was. And both of those are dispositive under the, the De La Nuz, Ramirez-Rivero. You want to reserve any time for rebuttal? I do, Your Honor. Thank you. Okay. Good morning, Your Honors. Good morning. Suzanne Nardone, attorney for the respondent, the United States. May it please the court, I would like to first talk about the procedural history of this case because I think that's really relevant here. Although there are numerous issues that are raised in the briefs, there were only a number of issues that were raised before the initial petition for review that was decided, the original case, the board decided in October 2011. The motion to reopen for a year and a half after the initial case was heard. And this was far beyond the 90-day timeframe for motions to reopen. Therefore, unless the court finds that the board abused its discretion in finding that the petitioner did not meet an exception for that 90-day timeframe because he did not establish equitable tolling should apply and he did not establish that change country conditions occurred in El Salvador since his hearing in 2009, then both of these issues are just not before the court. I thought we reinstated his petition for review, so the direct petition. I thought we reinstated that. The petition, you mean the first, the initial petition for review? We dismissed his petition for review for failure to prosecute in August 2012, but then when he got new counsel, he moved to reinstate his petition for review and we continued to reconsider, reopen. I think that's the the original petition. Well, there are two consolidated appeals. I mean, there is the first the first board decision, which was 2011, and those issues are before the court. But what I'm saying is there are a number of other issues that are in the petitioner's brief that really go to the ineffective assistance of counsel argument. That's all I saw in the brief was the ineffective assistance claims. And unless those, unless the motion to reopen was not to be granted because it was beyond the 90-day time frame and it didn't meet an exception, then none of those arguments should be before the court. And particularly if the petitioner does not address them in the brief and they're also waived, and we would argue that they were waived. The court should deny the first petition for review if it finds that it can reach those issues because the the board here properly found that petitioner failed to application for withholding removal was barred by his Commission of serious non-political crimes. Well, so what is the government's position on whether acts committed in a foreign country by a juvenile may constitute serious political crime disqualifying a person from discretionary immigration relief? And what's the best public best published opinion reflecting your position? The government's position is that the plain language of INA 241 does not make any exception for juveniles who commit serious non-political crimes. And indeed none of the bars in that section make that type of exception. Although the Congress has explicitly made exceptions in other areas. For example, in the case that petitioner cites Ramirez, that talks about the crimes involving moral disability. And their Congress specifically carved out juveniles. So certainly if they wanted to do that they would have done that. There's no indication here that INA 241 in any way is to accept juveniles from that provision. And Supreme Court in Nigeria, which is one of the strongest pieces of precedent that exists with regard to serious non-political crimes, discusses the broad discretion that the board has with consideration of non-serious non-political crimes. Because of the political nature of these crimes, Congress has, in the opinion of the Supreme Court, given a broad discretion to the board to make the determination on a case-by-case basis. And in Aigera-Agera, the Supreme Court also emphasized that there are not mitigating factors that need to be required, that are required to be considered. In that case, for example, the Refugee Handbook set forth mitigating factors that needed to be considered, but the Supreme Court said that those factors, although they may be considered by the board, were not, the board was not bound by them in any way. And so one of the, some of the things that they talked about in the UN Refugee Handbook were factors concerning coercion, duress, and also the age of the of the actor in those circumstances. So here, similarly to the Sixth Circuit finding in Urbana-Mesha, what the, what the, what the board did essentially here is they took a look at whether or not under CFR 1240.8d, a petitioner had overcome the showing of the government that there were serious non-political crimes here, and found that there were no substantial arguments raised by the petitioner that either because of his juvenile status or because he was coerced in some way, that he shouldn't be held responsible for the seriousness of his crimes. And so, but aren't we bound by the BIA's interpretation of statutory language in the INA? Sure. In the INA, if you look at these cases, and even the cases that were submitted by Petitioner's Council in the 28J, what they show the board doing in those cases is really looking at a number of mitigating factors. And they will consider mitigating factors to the extent they are raised and argued substantially. And in this case, they certainly, they simply are not there. And that's what the board found here. If you look at the case, the first board case that was submitted by the petitioner in this, it was a single board member decision there. And the board there noted some important mitigating factors that were relevant. And distinguished, as Your Honor mentioned, distinguished the case before it from circuit court cases of F.A. and also Urbana-Mesa. And specifically it pointed to the fact that in this circumstance, this gang member who was a child had been brought into the gang when he was homeless, a homeless child. He was forced into the gang. He had specifically testified that he didn't participate in any of the serious activities of the gang and that he was a menial member of the gang, essentially. That he had not participated in street gang fights or any of that type of activity. In this case, there are very distinct facts from that case. Here we have a 15 street fights during which he either possessed a firearm or a grenade. And that he had shot his or discharged his weapon numerous times and that many people died. In his testimony, he provided also that he was present for the deaths of 15 people, including two civilians. And one of the civilians, he actually participated in the killing of this civilian to the extent that he yelled at the person at the beginning of their harassment of him. So the circumstances here I would submit are very different from the board's decisions that were submitted by petitioner. And the board has not come out with a very clear statement of how these factors are to be considered. How the factors with regard to a juvenile or duress or coercion are to be considered. But it does consider them on a case-by-case basis, which is exactly what the Supreme Court in Niagara-Gare found that it was in the discretion for the board to do, sort of as the cases come to it. So it's the government's position that the board probably found petitioner was barred from withholding or removal based on his commission of serious non-political crimes. And also that he failed to establish his eligibility for withholding of removal based on his membership in a particular social group, as Your Honor noted, based on either his former gang membership or based on his membership in a family. So is that an alternate ground that if we didn't want to weigh into the juvenile acts, is there an alternate ground? Yeah, the board did find in case number 11-735-79 that there were alternative grounds. Either he was barred based on his commission of serious non-political crimes or he did not establish membership in a particular social group because of his former gang membership or based on his family membership. And indeed, based on his own testimony, there's no indication that he was going to be targeted based on his family membership. He testified that his parents had had some problems, but those problems were related to his gang membership, not based on his family membership. Really, there's nothing independent of his membership in the gang that he would be targeted based on. The board also found that petitioner failed to establish that he was more likely than not to be subjected to torture. Indeed, he provided that his parents had been harassed, but they had never reported to the police in any way. So there's no indication that the government of El Salvador was going to acquiesce in his torture. That was presented on his first petition for you. With regard to his motion to reopen, it's very important to note that the board found that first the petitioner did not comply with the requirements of a motion to reopen with regard to establishing equitable tolling for ineffective assistance of counsel because he did not comply substantially with matter of Lozada. Very importantly... Well, they did attach, I think, a declaration from the former attorney. Why should we not waive petitioner's failure to fully comply with Lozada based on that? Well, there's a very important distinction here. I understand that in some circumstances, matter of Lozada, this this court has held is not ironclad. There are circumstances where, you know, if the protections that are provided by matter of Lozada are otherwise met, that there can be some flexibility with this application. However, in this case, there are very important facts that the court needs to be paying attention to. The petitioner on this statement concerning his motion to reopen and concerning ineffective assistance of counsel, he brings up facts upon which now petitioner is arguing he should base his new particular social groups that he never mentioned in his first testimony, never mentioned in his first statement. So these facts are coming up brand new a year and a half later, specifically with the fact that he had been attacked by a gang member with a machete and that he had to the police and that he was getting, you know, retribution as a result of reporting to the police. All those are new facts that were not ever presented the first time around. So importantly, the petitioner's former counsel has never responded to any of these allegations. He responded only to the claim that he had not supported the Convention Against Torture claim sufficiently by submitting expert testimony. And so if you look at the statement of Attorney Jacobs, it's a very small response that he provides and he only responds to the claim that he didn't support the CAT claim sufficiently. He doesn't discuss any of these claims with regard to a particular social group. He doesn't discuss any of these facts that he allegedly did not, was unaware of. So I'm looking at the declaration and he's referring to making an application on his behalf for asylum. I don't see a reference to CAT. I think he just talks about how he, I'm sorry, excuse me, I'm just going to grab that. I mean it is limited. He only refers to not having brought in an expert report. Yeah, an expert report. Submitted documentation of gang violence. Gang violence in El Salvador, yeah. I mean it's, the reason I'm saying that this is specific to his Convention Against Torture claim is because if you look at the petitioner's motion to reopen, this was really the brunt of the argument was that had he submitted this statement from the expert on gang violence, he would have been able to establish that petitioner would likely face torture by gang members upon his return because former gang members were getting targeted. One of the arguments opposing counsel makes is that compliance with Lozada's excuse because it's plain on the face of the application that the attorney was ineffective and they point to Jacob's failure to prosecute the voluntary departure claim. In your briefing you said, well maybe it was strategic, but I can't see any strategy for not pursuing voluntary departure. Well even if that argument, you know, you don't agree with that argument, there's also no indication that he was even aware that he was, that voluntary departure would be something that he wanted or... Well how would it have helped him? Applying for voluntary departure? Yes. Well I, the petitioner's argument I suppose is that he would have been able to apply for adjustment of status. I'm not quite sure what the argument is there. Is it because he got married and had a child or something? He later got married and had, yeah, he was there, from what I understand in the testimony he was engaged or he was married during his testimony. I don't know when he became eligible to adjust his status, but that's not anything that we have any, the board doesn't have any information on that with regard to Attorney Jacobs. Is it plain on the face that he qualifies? They, they make, the opposing council makes the argument that it's plain that he qualifies for voluntary departure. I didn't see anything on good moral character or... There's no, there's no, there's no information about that whatsoever. And more, more importantly, there's no information that Attorney Jacobs was aware of his eligibility for either adjustment of status or voluntary departure or that he was interested in voluntary departure. He says to the, in the transcript, Jacob says to the IJ that he's also seeking voluntary departure relief. So, so he did make that statement. He just didn't pursue it. Well, I mean, even, even with regard to that, Petitioner has not shown any way that he's, that he's suffered prejudice as a result of that, of his failure to, he also has not indicated that he would have ever actually departed if he was given the opportunity to do so voluntarily. Also Petitioner did not say... We're actually over your time unless any of the judges have questions. Thank you, Your Honors. Any additional questions? Apparently not. Thank you. Thank you. Thank you, Your Honor. With respect to voluntary departure, as you pointed out, Mr. Jacob did indicate that he was going to pursue voluntary departure. There's... And then he didn't. He did not. He didn't say anything about it. Right, I think that's... So is it plain? Does, for example, the good moral character, one of the issues is that you can't testify falsely and there is evidence in the record that your client gave a whole range of different ages based on his view that being younger would assist him in getting immigration benefits. So it appeared that that was an issue for voluntary departure. Can you address that? The age, I think, is tied with the ineffective assistance, but he did truthfully... Well, no, I mean, he should know his age. Yeah, no. I mean, he gives three different ages, doesn't he? He does. He does testify that his father had tried to make him appear older so that he could get a visa, so that he could flee the violence. That was a 1981 birth year. His birth years reported correctly in the declaration to his initial application. That's at 698. He actually gives, either in declarations or testimony, different ages when different acts occur. His... Your client, the petitioner. Yes, he did. He corrected the record in the motion to reopen, as well. So how would seeking voluntary departure, how would it have even qualified and how would it have helped him? Well, the requirement is that you have good moral character for five years preceding the application for voluntary departure and that you not be One, there's no finding by the board, no finding by the immigration judge about the merits of the voluntary departure issue. And so he, the IJ denied for failure to prosecute. The IJ said it wasn't prosecuted. So now we're in the ineffective assistance of counsel and the excuse from Lozada has to be it's plain on the face that he was ineffective. And one of your claims that it's plain on the face is because he qualified for voluntary departure, but it wasn't clear to me on the face that he qualified. That's why I was asking about good moral character. What I'd like to do with the very little remaining time is talk about the Convention Against Torture, if you don't mind. Well, you only have 25 seconds. Okay. I just... The board used the wrong standard of review in assessing petitioner's CAT claim. They said we're not persuaded by the respondent's vague and unpersuasive allegations, which are not based on personal knowledge. Facts presented in a motion to reopen must be deemed true unless they're inherently unbelievable. The board also required prima facie evidence of eligibility for relief, but Tadevossian v. Holder says you only need to establish a reasonable likelihood that the statutory requirements for relief have been satisfied. The petitioner presented several hundred pages of evidence showing, substantiating his belief that he will be killed if he's returned to El Salvador. The court should remand the case for the board to look at that with competent counsel in the first instance. The evidence is clear that he will be killed if he's returned to El Salvador. All right. Unless there's additional questions by the court, I've given you extra time and your time's expired. Thank you both for your argument. This matter will stand submitted.
judges: Fernandez, Callahan, Ikuta